IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANKLIN MILLS ASSOCIATES, L.P. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-3045 |
| NATIONWIDE LIFE INSURANCE | : | |
| COMPANY | : | |

## MEMORANDUM

**SURRICK, J.**                                                   **DECEMBER  12 , 2011**

Presently before the Court are Plaintiff Franklin Mills Associates L.P.'s Motion for

Summary Judgment (ECF No. 11) and Defendant Nationwide Life Insurance Company's Cross-

Motion for Summary Judgment and Motion to Strike (ECF No. 12).  For the following reasons,

Plaintiff's Motion is granted in part and denied in part, and Defendant's Motion is denied.

## I.      BACKGROUND

In this action, Plaintiff Franklin Mills Associates L.P. asserts a breach of contract claim

against Defendant Nationwide Life Insurance Company, alleging that Defendant owes Plaintiff

certain promotional and maintenance assessment payments related to property owned by

Defendant.

### A.      The Property

The property at issue and owned by Defendant is located at 1933 Franklin Mills Circle,

a/k/a 4301 Byberry Road, Unit M3, Philadelphia, Pennsylvania (the "Property").  (Compl. ¶ 3,

ECF No. 1.)  The Property is part of a larger parcel of land that was developed as a shopping mall.

(*Id.* at ¶ 5.)  Plaintiff owns property known as the Franklin Mills Mall that is located adjacent to

the Property.  (*Id.* at ¶¶ 4-5.)  On August 15, 1988, Plaintiff's predecessor in interest, Liberty Mills

Limited Partnership ("Liberty Mills"), conveyed the Property to PMI Associates ("PMI").  (*Id.* at ¶ 8; Pl.'s Mot. Ex. A at 1, ECF No. 11.)   After the Property was conveyed to PMI, Defendant loaned money to PMI using the Property as collateral for the loan.  (Def.'s Mot. 2, ECF No. 12.) When PMI defaulted on the loan, PMI conveyed the Property to Defendant by way of deed in lieu of foreclosure.  (*Id.*)

### B.      Annual Assessments

On August 15, 1988, in connection with conveying the Property to PMI, Liberty Mills and PMI entered into a Declaration of Restrictions (the "Declaration") and a Supplemental Agreement.  (Compl. at ¶ 9; Pl.'s Mot. Exs. B, D; Pl.'s Sur-reply Ex. A, ECF No. 17.)  The Declaration was recorded on August 18, 1988.  (Pl.'s Sur-Reply & Ex. A.)  The Supplemental Agreement was never recorded.  The purpose of the Declaration was to "memorialize certain understandings regarding the use, occupancy and improvement of the Property."  (Pl.'s Sur-reply Ex. A at 1.)  One such understanding was that the Seller, Liberty Mills, would create and administer a "Promotional Fund" for the purpose of advertising and promoting the business at the Franklin Mills Mall and at the Property.  (*Id.* at 13.)  The Declaration also required the Buyer, PMI, to "pay to Seller, its successors and assigns" annual assessments which consisted of (1) payments made to fund the Promotional Fund (the "Promotional Assessment") and payments to cover costs of maintaining the Common Areas (the "Maintenance Assessment," and together with the Promotional Assessment, the "Annual Assessments").  (*Id.*)[1]  The Declaration states:

_____

[1]  "Common Areas" is a defined term used in the Declaration; however, it is not defined in the Declaration.  Rather, the Declaration refers to the definition found in the Master Declaration, a document that is not a part of the record in this matter.  Upon review of an opinion from Judge Buckwalter in a separate action relating to the Property, we understand that the Master Declaration refers to the Master Declaration and Agreement of Easements, Covenants,

> The Annual Assessments, together with interest thereon . . . and costs of collection therefore (including reasonable attorneys' fees) shall be charges and continuing liens upon the Property, binding upon Buyer and all successors in title to the Property.
>
>        . . .
>
> No sale or transfer shall relieve the owner of the Property (including, without limitation, any mortgagee in possession) from liability for any Annual Assessments. All Annual Assessments, together with the interest thereon . . . and costs of collection thereof, including reasonable attorneys fees, shall be the personal obligation of the record owner of the Property at the time when the Annual assessments are due.

(Pl.'s Sur-reply Ex. A ¶ 13(c).)  The Declaration further states:

> Seller, or its successors and assigns, may bring an action at law against any record owner of the Property that held title to the Property at the time the subject Annual Assessments are due, and/or Seller may foreclose the liens against the Property in any lawful manner.  By accepting a conveyance of the Property, each and every successor to Buyer's title to the Property shall be deemed to have accepted and agreed to be bound by the personal obligation to pay any and all Annual Assessments which become due during the period in which they held title to the Property.

(*Id.* at ¶ 13(d).)  Finally, the Declaration states:

> All of the foregoing covenants, conditions, restrictions and easements shall be covenants running with the land, and shall be binding upon the parties hereto and their respective representatives, successors and assigns, and all subsequent owners and occupants of the Property.
>
>        . . .
>
> All of Buyer's covenants, conditions, restrictions and easements shall be enforceable against Buyer as the owner of the Property, and its successors in title to the Property, and shall inure to the benefit of and be enforceable by Seller, its personal successors, or assigns.

(*Id.* at ¶ 16.)

The Declaration further requires that the Annual Assessments are to be paid in monthly

installments and that the amount and calculation of the Annual Assessments are to be determined

---

Conditions and Restrictions with Liberty Mills Residual Limited Partnership, executed on June 28, 1988 by and between Liberty Mills Limited Partnership and Liberty Mills Residual Limited Partnership.  *See Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 05-281, 2011 U.S. Dist. LEXIS 16446, at *2 (E.D. Pa. Feb. 17, 2011).

in accordance with the Supplemental Agreement.  (*Id.* at ¶¶ 13(a), (b).)[2]

A dispute exists about when the Annual Assessments ceased being paid.  In its Complaint, Plaintiff contends that Defendant has failed to pay Annual Assessments since January 1, 2008.  (Compl. ¶ 19.)  In its Answer, Defendant denies the allegation, and admits only that it "has not paid assessments requested by Plaintiff."  (Answer ¶ 19, ECF No. 4.)  Plaintiff thereafter states that Defendant has not paid Annual Assessments since March 1, 2007.  (Pl.'s Mot. 3.)

### C.      Other Litigation Related to the Property

On October 27, 2004, Defendant filed a civil action against Plaintiff in the United States District Court for the Eastern District of Pennsylvania, seeking a declaration with respect to certain covenants contained in the Declaration related to the use and transfer of the Property. *Nationwide Life Ins. Co. v. Franklin Mills Assocs. Ltd. P'ship*, No. 04-5049 (E.D. Pa., filed Oct. 27, 2004).  Plaintiff and Defendant settled that action by entering into a Settlement Agreement dated January 15, 2008.  (Pl.'s Mot. Ex. C.)  The case settled without any ruling on the substantive issues.

Defendant also filed a civil action on January 20, 2005, against Commonwealth Land Title Insurance Company ("Commonwealth").  *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, No. 05-281 (E.D. Pa., filed Jan. 20, 2005).  Defendant purchased a title insurance policy from Commonwealth in connection with issuing a mortgage on the Property.  In that

---

[2]  Defendant requests that we strike the Supplemental Agreement from the record in this case.  Defendant argues that Pennsylvania's Realty Transfer Tax statute, 72 Pa. Cons. Stat. Ann. § 8101-C, *et seq.,* prohibits us from considering the Supplemental Agreement as part of the record on summary judgment.  As discussed hereinafter, we reject this contention and deny Defendant's Motion to Strike.  The Supplemental Agreement will be considered a part of the record for purposes of summary judgment.

action, Defendant sought coverage for losses it allegedly incurred as a result of covenants and restrictions contained in the Declaration.  *(Id.)*  Summary judgment was granted in favor of Defendant with respect to entitlement of coverage under the title insurance policy.  *Nationwide*, 2011 U.S. Dist. LEXIS 16446, at *77.  The court denied summary judgment with respect to the amount of damages.  *Id.,* at *107-08.  As part of its damages claim, Defendant sought reimbursement for Annual Assessments that it allegedly paid since taking title to the Property. *Id.,* at *93-94.  The court subsequently denied Commonwealth's motion for reconsideration and granted Commonwealth's request to certify the court's February 17, 2011 Memorandum and Order for interlocutory appeal.  (Order*, Nationwide*, No. 05-281, ECF No. 67.)  As a result, all matters before the District Court in that action are stayed, including Defendant's request for reimbursement of Annual Assessments charges, pending resolution of the interlocutory appeal. (*Id.*)

      **D.**    **Procedural History**

On July 8, 2009, Plaintiff filed the instant Complaint alleging a breach of contract claim against Defendant.  On December 21, 2009, Plaintiff filed its Motion for Summary Judgment. On January 7, 2010, Defendant filed its Cross-Motion for Summary Judgment and Motion to Strike.

**II.**    **SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will

not be counted.").  Where the nonmoving party bears the burden of proof at trial, the moving

party may identify an absence of a genuine issue of material fact by showing the court that there

is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d

Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth

specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c)(1) ("A

party asserting that a fact is genuinely . . . disputed must support the assertion by . . . citing to

particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986) (noting that the nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts").  "Where the record taken as

a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no

'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).  When deciding a

motion for summary judgment, courts must view facts and inferences in the light most favorable

to the nonmoving party.  *Anderson*, 477 U.S. at 255.  Courts must not resolve factual disputes or

make credibility determinations.  *Siegel v. Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125,

1127 (3d Cir. 1995).

When a court is faced with cross-motions for summary judgment, "[t]he rule is no

different."  *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).  "Cross-motions

are no more than a claim by each side that it alone is entitled to summary judgment, and the

making of such inherently contradictory claims does not constitute an agreement that if one is

rejected the other is necessarily justified or that the losing party waives judicial consideration and

determination whether genuine issues of material fact exist." *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.3d 241, 245 (3d Cir. 1968).

## III.    DISCUSSION

In its Motion, Plaintiff contends that the covenant to pay Annual Assessments is a covenant that runs with the land and is therefore binding on subsequent owners of the Property, such as Defendant.  In support of its contention, Plaintiff points to language contained in the Declaration and argues that the language establishes an intent that the covenant to pay Annual Assessments was meant to run with the land.

In its Cross-Motion, Defendant puts forth numerous arguments that the covenant to pay Annual Assessments does not run with the land and that judgment should instead be entered in its favor.  In the alternative, Defendant posits that summary judgment is premature at this stage and requests that we deny summary judgment entirely to allow the parties to complete discovery.

For the following reasons, we will grant summary judgment to Plaintiff with respect to Defendant's contractual obligation to pay Annual Assessments.  We will deny summary judgment with respect to the amount of damages.  The parties are entitled to further discovery to determine the exact amount of damages owed by Defendant.

### A.    Obligation to Pay Annual Assessments

We look to state law to determine if a covenant runs with the land.  *Jetro Cash and Carry Enter. Inc. v. Food Distrib. Ctr.*, 569 F. Supp. 1404, 1407-08, 1417 (E.D. Pa. 1983).  Under Pennsylvania law, the determination of whether a covenant runs with the land is governed by the intent of the parties.  *Leh v. Burke*, 331 A.2d 755, 761 (Pa. Super. Ct. 1975), *petition for allowance of appeal denied* (Feb. 2, 1975) ("the test . . . is whether it was so intended by its

creators.") (citing *J.C. Grille, Inc. Liquor License Case*, 124 A.2d 659, 663 (Pa. 1956)).  A statement that "the grantees' heirs or assigns are considered bound by its terms is generally decisive of the question."  *Leh*, 331 A.2d at 760.  However, where the language is not clear, the parties' intentions "should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when [the agreement] was made."  *Id.* (quoting *Paker v. Hough*, 215 A.2d 667, 670 (Pa. 1966)).

Covenants providing for annual assessments or charges have been found to run with the land.  *See Locust Lake Village Prop. Owners Ass'n v. Wengard*, 899 A.2d 1193, 1199-1200 (Pa. Commw. Ct. 2006) (affirming summary judgment against property owner subject to covenant to pay annual assessments for the maintenance and operation of the common areas); *Wild Acres Lakes Prop. & Homeowners Ass'n v. Coroneos*, 690 A.2d 794, 796 (Pa. Commw. Ct. 1997) ("Covenants providing for assessment of an annual lien or charge are clearly covenants running with the land."); *Treasure Lake Prop. Owners Ass'n, Inc. v. Meyer*, 832 A.2d 477, 482 (Pa. Super. Ct. 2003) (covenant to pay maintenance fees held to run with the land); *Birchwood Lakes Cmty. Ass'n, Inc. v. Comis*, 442 A.2d 304, 307 (Pa. Super. Ct. 1982) (finding that covenant to pay annual maintenance dues which extended to "Grantee . . . heirs, successors, executors, administers and assigns" were clearly intended to run with the land).

Here, the Declaration states that "[a]ll of the foregoing covenants . . . shall be covenants running with the land, and shall be binding upon the parties hereto and their respective representatives, successors and assigns, and all subsequent owners and occupants of the Property."  (Pl.'s Sur-reply Ex. A ¶ 16.)  Moreover, the Declaration states that Annual Assessments shall be "charges and continuing liens upon the Property, binding upon Buyer and

all successors in title to the Property."  (*Id.* at ¶ 13(c).)  The Declaration further provides that "[n]o sale or transfer shall relieve the owner of the Property (including, without limitation, any mortgagee in possession) from liability for any Annual Assessments."  (*Id.*)  Accordingly, the plain language of the Declaration manifests a clear intent that the covenant to pay Annual Assessments was meant to run with the land.  *See Jetro Cash*, 569 F. Supp. at 1407, 1417 (specific language in contract that "covenants shall be . . . running with the land" held to be dispositive on issue of intent); *Leh*, 331 A.2d at 760 (statement in deed that "Grantees, their heirs or successors in title shall bear their proportionate share of the expenses of such improvements" was indicative that covenant was intended to run with the land).

When a covenant such as one to pay annual assessments is found to run with the land, the covenant binds successors in title to the property to the obligation of performance.  *Wild Acres*, 690 A.2d at 796 ("Covenants providing for assessment of an annual lien or charge are clearly covenants running with the land and as such are intended to bind successors in interest of all grantees."); *Leh*, 331 A.2d at 761 ("When a promise to do an affirmative act, such as . . . to make a monetary payment, is found to run with the land, the person in possession at the time the obligation matures is responsible for discharging it.").  The Declaration confirms this obligation with respect to subsequent property owners.  It states that "[a]ll Annual Assessments, together with the interest thereon . . . and costs of collection thereof, including reasonable attorneys fees, shall be the personal obligation of the record owner of the Property at the time when the Annual Assessments are due."  (Pl.'s Sur-reply Ex. A ¶ 13(c).)  The Declaration further states that "[b]y accepting conveyance of the Property, each and every successor to Buyer's title to the Property shall be deemed to have accepted and agreed to be bound by the personal obligation to pay any

9

and all Annual Assessments which become due during the period in which they held title to the Property." (*Id.* at ¶ 13(d).)  Accordingly, Defendant is bound by the obligation to pay those Annual Assessments that have accrued during Defendant's ownership of the Property.

Defendant's arguments opposing its responsibility to pay Annual Assessments lack merit. We will address each argument in turn.

First, it is irrelevant that Defendant was not a signatory to the Declaration or the Supplemental Agreement.  Defendant appears to be confusing the principles of contract law with the principles of property law.  Although generally, a contract cannot impose obligations on one who is not a party to that contract, *Matter of Estate of Barilla*, 535 A.2d 125, 128 (Pa. Super. Ct. 1987), if an obligation in a deed or contract relating to real estate is found to run with the land, the obligation is binding on subsequent property owners, regardless of whether they were signatories to the original real estate contract or deed.  *Leh*, 331 A.2d at 761.  The Declaration is a contract relating to real estate, the Property.  The covenant to pay Annual Assessments runs with the land, and is therefore personally binding on subsequent property owners, including Defendant.

Second, Defendant's contention that it has not expressly assumed the obligation to pay Annual Assessments similarly confuses property law with contract law.  Defendant does not need to expressly assume a properly recorded covenant if the covenant runs with the land.  Defendant assumed the obligation when it accepted the deed to the Property in lieu of foreclosure, and was put on constructive notice of all of the covenants and restrictions contained in the Property's chain of title.  *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 855 A.2d 873, 880 (Pa. 2004) ("A property owner has the duty to become aware of the recorded restrictions in the chain of title

and will be bound to such restrictions absent actual notice."); *Walsh v. East Pikeland Twp.*, 829 A.2d 1219, 1223 (Pa. Commw. Ct. 2003) (property owner must have actual or constructive notice of an encumbrance on the property in order for the encumbrance to be enforced against him) (citation omitted); *see also* 35 Pa. Cons. Stat. Ann. §§ 356, 357.[3]  The Declaration was recorded on August 18, 1988, and explicitly provides for the obligation to pay Annual Assessments.  (Pl.'s Sur-reply Ex. A.)  Defendant took title to the Property after the Declaration was recorded.  Accordingly, Defendant is bound by the obligation to pay Annual Assessments.[4]

Third, Defendant's argument that it "was not aware of and had not been provided a copy of the Supplemental Agreement" at the time it took title to the Property (Baiamonte Aff. ¶ 10, Def.'s Mot. Ex. A), and therefore had improper notice of the obligation to pay Annual Assessments, is legally and factually unsupportable.  Under Pennsylvania law, a "grantee is charged with notice of everything affecting his title which could be discovered by an examination

---

[3]  Section 356 states that "[a]ll agreements in writing relating to real property . . . where the parties . . . grant, bargain, sell, or convey any rights or privileges of a permanent nature pertaining to such real property . . . shall be recorded in the office for the recording of deeds in the county or counties wherein such real property is situate."  35 Pa. Cons. Stat. Ann. § 356. Section 357 states that "[t]he legal effect of the recording of such agreements shall be to give constructive notice."  35 Pa. Cons. Stat. Ann. § 357.

[4]  Indeed, Defendant even listed the Declaration as a "Permitted Exception" in the mortgage documents issued to PMI prior to foreclosure.  *See Nationwide*, 2011 U.S. Dist. LEXIS 16446, at *7-8.  The Mortgage specifically states that PMI as borrower "covenants and warrants with and to Lender [Defendant] that, subject to the Permitted Exceptions (as hereinafter defined), Borrower is indefeasibly seized of the property and has . . . lawful authority to convey and encumber all the same as aforesaid."  *Id.*  The Declaration is explicitly listed as one of the Permitted Exceptions.  *Id.*  Defendant can hardly argue that it did not have notice of the existence of the Declaration, or of the Supplemental Agreement, which was executed on the same day as the Declaration, states specifically that it "shall be construed as if it were incorporated within and physically apart of the Declaration," and is repeatedly referred to in the Declaration.  (Pl.'s Sur-reply Ex. A at 1 & ¶ 3.)

of the records or other [documentary evidence] of title of his grantor." *Vernon Twp.*, 855 A.2d at

880 (quotation and citation omitted); *see also Balog v. Marlow*, 30 Pa. D. & C.3d 170, 182 (Pa.

Com. Pl. 1980) ("[c]onstructive notice exists when there are facts available which a reasonably

prudent buyer of land should learn of or discover whether he actually does so or not.").

The Supplemental Agreement was never recorded.  The Declaration, however, which

spells out the obligation to pay Annual Assessments, and repeatedly refers to the Supplemental

Agreement as the source of how to calculate the amounts of these assessments, was duly

recorded.[5]  The recording of the Declaration, therefore, put Defendant on constructive notice of

the covenant to pay Annual Assessments.[6]  *Vernon Twp.*, 855 A.2d at 880 (stating that property

owner who had constructive notice of the recorded restrictive covenant could not "avoid the

consequences of such restriction because of its own lack of due diligence"); *see also Jetro Cash*,

569 F. Supp. at 1418 (stating that "if Jetro knew of the covenant's existence, which they admit,

but were unsure of its meaning, a simple inquiry should have been made").

The fact that details on how to calculate the amounts of these assessments were contained

in an unrecorded document is irrelevant.  *See Reed v. Reese*, 374 A.2d 665, 670 (Pa. 1976)

(unrecorded plot plan was sufficient to establish easement in favor of property owner where plot

---

[5]  Defendant argues that the Supplemental Agreement rather than the Declaration gives rise to the obligation to pay Annual Assessments.  This argument ignores the plain language of the Declaration, which states that "Buyer hereby covenants and agrees to pay to Seller . . . [Annual Assessments]" and that the "Annual Assessments . . . shall be . . . binding on Buyer and all successors in title to the Property."  (Pl.'s Sur-reply Ex. A ¶ 3.)

[6]  Arguably, Defendant had actual notice of the covenant to pay Annual Assessments. Defendant was certainly aware of the existence of the Declaration at the time Defendant issued a mortgage on the Property because Defendant references the Declaration in the mortgage documents.

plan was referenced in recorded deed); *Loeb v. Watkins*, 240 A.2d 513, 516 (Pa. 1968).  In *Loeb*, landowners complained that they did not have notice of a restrictive covenant because the agreement containing the covenant failed to adequately describe the restriction and merely referred to an unrecorded development plan.  *Loeb*, 240 A.2d at 516.  The Pennsylvania Supreme Court rejected this argument and stated that the "instrument containing the restriction was placed of record and this was sufficient to indicate and provide notices of the properties covered thereby."  *Id.*  Accordingly, even though the Supplemental Agreement was not recorded, Defendant's constructive notice of the Declaration was sufficient to put Defendant on notice of the existence of the covenant to pay Annual Assessments.

Fourth, Defendant's reliance on Pennsylvania's Realty Transfer Tax statute, 72 Pa. Cons. Stat. Ann. § 8101-C, *et seq*, in arguing that the Supplemental Agreement is unenforceable ignores the plain language of the statute.[7]  The relevant section of the statute provides that "[n]o document upon which tax is imposed by this article shall at any time be made the basis of any action or other legal proceeding, nor shall proof thereof be offered or received in evidence . . . without the documentary stamp."  72 Pa. Cons. Stat. Ann. § 8108-C.  The documentary stamp is evidence that the tax has been paid.  *Id.* at § 8105-C(a).  "Document" is specifically defined in the statute to be "[a]ny deed, instrument or writing which conveys, transfers, devises, vests, confirms or evidences any transfer or devise of title to real estate."  *Id.* at § 8101-C.  Defendant argues that the Supplemental Agreement does not contain the necessary documentary stamp, and therefore should not be made the basis of or offered into evidence in this action.  However, the

---

[7]   The Realty Transfer Tax statute generally imposes a tax on the value of consideration paid for the transfer of Pennsylvania real estate.

Supplemental Agreement is not a "document" that "conveys, transfers, devises, vests, confirms, or evidences any transfer or devise of title to real estate." *Id.* Rather, the Supplemental Agreement was intended to merely supplement and provide additional details on certain obligations contained in the Declaration, which also is not a "document" for purposes of the statute.

Defendant suggests that because the taxable value of the transfer of the Property included "the value of the construction work to be performed pursuant to the Supplemental Agreement," the Supplemental Agreement should also have received a documentary stamp. (Def.'s Reply 4, ECF No. 16.) Although it may be true that the taxable value of any transfer includes amounts related to construction, *see* 61 Pa. Code § 91.137, Defendant cannot ignore the definition of "document" which includes only those writings that "convey[ ], transfer[ ], devise[ ], vest[ ] . . . or evidence[ ] . . . transfer or devise of title to real estate." 72 Pa. Cons. Stat. Ann. § 8101-C. At best, Defendant has presented an ambiguity in the statute's construction, and ambiguities are construed in favor of the taxpayer, here Plaintiff's predecessor. *Commonwealth v. Wilson Prods.*, 194 A.2d 162, 165 (Pa. 1963) (stating that ambiguities are construed "most strongly and strictly against the Government and if there be a reasonable doubt as to its construction or its application to a particular case, that doubt must be resolved in favor of the taxpayer").

Fifth, Defendant contends that the Promotional Assessment does not "touch and concern" the Property nor "affect the physical senses" and therefore does not run with the land. (Def.'s Mot. 11-12.) Specifically, Defendant argues that the Promotional Assessment is "solely for the economic benefit of the mall" and does not "bear any physical relationship to the real property it allegedly burdens." (*Id.* at 11.) Defendant relies on the case of *Price v. Anderson*, 56 A.2d 215

(Pa. 1948).[8]  *Price* involved the analysis of a restrictive covenant, specifically a land use restriction, and not a nonrestrictive covenant, such as the affirmative obligation to pay assessments.  Accordingly, *Price* is not applicable to the covenant at issue in this case.  *See Fawn Lake Forest Ass. Inc. v. Tussel*, 24 Pa. D. & C.4th 70, 74 (Pa. Com. Pl. 1995) ("Deed provisions requiring the payment of fees or assessments which do not restrict or regulate a lot owner's property cannot be considered restrictive covenants.").

Restrictive covenants, and particularly land use restrictions, are not favored by Pennsylvania law and are therefore strictly construed.  *Vernon Twp.*, 855 A.2d at 880.  As a result, courts have fashioned various ways by which a property owner burdened by restrictive covenants may seek to have them declared unenforceable.  *See, e.g.*, *Daniels v. Notor*, 133 A.2d 520, 523 (Pa. 1957) (changed or altered conditions in the neighborhood may allow a restrictive covenant to be discharged); *Kajowski v. Null*, 177 A.2d 101, 106 (Pa. 1932) (acquiescence in its breach by others, or an abandonment of the restriction may result in discharge of a restrictive covenant); *Price*, 56 A.2d at 221 (invalidating restrictive covenant that serves only pecuniary or economic benefit to the dominant estate).  The methods used to invalidate land use restrictions, however, are not applicable to the covenant to pay Annual Assessments.  *See Birchwood Lakes*, 442 A.2d at 307 (rejecting defendant's attempt to frame obligation of paying maintenance fees as

---

[8]  In *Price*, the court invalidated a restrictive covenant requiring property to be used for residential purposes.  *Price*, 56 A.2d at 220-21.  The court concluded that the restriction's purpose—to prevent competition with surrounding commercial establishments—was no longer valid in that the value gained by it was purely economic or pecuniary.  *Id.* at 221 (stating that a restrictive covenant must "make the use or enjoyment more satisfactory to [the property owner's] physical senses" and that "it is not enough that the income from [the restrictive covenant] is increased by virtue of it") (quoting Restatement (First) of Property § 537 cmt. b).

a restrictive covenant "in the hope that a standard of review more favorable to their position will be applied," and instead applying the standards applicable to nonrestrictive covenants).

Notably, Defendant has not pointed to nor are we aware of any Pennsylvania case supporting the proposition that the enforceability of nonrestrictive covenants, like the obligation to pay assessments, turns on whether such covenants "affect the physical senses."[9]  Rather, the cases examining covenants to pay assessments have enforced such covenants, without any pause for consideration of whether they "affect the physical senses" or "touch or concern" the property at issue.  *See Locust Lake*, 899 A.2d at 1200; *Wild Acres*, 690 A.2d at 796; *Treasure Lake*, 832 A.2d at 482; *Birchwood Lakes*, 442 A.2d at 317.

Sixth, Defendant's contention that the Maintenance Assessment does not run with the land because it renders the Property's value negative is without legal support.  Defendant submits that it has attempted, although unsuccessfully, to sell or lease the Property.  According to Defendant, the Property is unmarketable, and thus the covenant to pay Annual Assessments is unenforceable.  Again, Defendant relies on cases construing restrictive covenants.[10]  These cases

---

[9]  Every Pennsylvania case we have found that discusses the requirement that a covenant "affect the physical senses" has been in relation to a restrictive covenant, and in particular, a land use restriction, and not an affirmative covenant.  *See, e.g.*, *Schulman v. Serrill*, 246 A.2d 643, 647 (Pa. 1968) (land use restrictive covenant); *Daniels*, 133 A.2d at 525 (same); *Price*, 56 A.2d at 220-21 (same); *Gey v. Beck*, 568 A.2d 672, 681 (Pa. Super. Ct. 1990) (same); *Scott v. Owings*, 302 A.2d 423, 424 (Pa. Super. Ct. 1973) (same); *Altschuler v. Mont.*, 24 Pa. D. & C.3d 160, 161-62 (Pa. Com. Pl. 1982) (same).

[10]  Defendant relies on *Price* and *Katzman v. Anderson*, 59 A.2d 85 (Pa. 1948).  Both of these cases deal with land use restrictions, which are types of restrictive covenants.  The remaining cases cited by Defendant likewise involve restrictive covenants.  *See, e.g.*, *Daniels*, 133 A.2d at 522 (restrictive covenant prohibiting commercial use of property); *Snyder v. Plankenhorn*, 159 A.2d 209, 210 (Pa. 1960) (restriction prohibiting building from being closer than 50 feet to the road); *Deitch v. Bier*, 333 A.2d 784, 784 (Pa. 1975) (restrictive covenant prohibiting commercial use of property); *Schulman*, 246 A.2d at 644-45 (restrictive covenant

stand for the proposition that if changes to the character or condition of neighborhoods, such as a transition from residential to commercial, render property unmarketable on account of a restrictive covenant, equity dictates the discharge of such restrictive covenant. *Price*, 56 A.2d at 218 ("[S]uch a decided change of conditions makes it improper for a chancellor to enforce a covenant . . . because public policy dictates that land shall not be unnecessarily burdened with permanent or long-continued restrictions."); *Katzman*, 59 A.2d at 87. These cases and the proposition for which they stand are not applicable to nonrestrictive covenants like the covenant at issue in this case. *Birchwood Lakes,* 442 A.2d at 307. Even if we were to apply this analysis to the covenant to pay Annual Assessments, Defendant has nevertheless failed to show any change in conditions. We are sympathetic to Defendant's difficulty with selling or leasing the Property in the face of a depressed real estate market. However, Defendant's frustration is not a justification for rendering unenforceable an otherwise valid covenant.

Seventh, we reject Defendant's rather disingenuous contention that a statement made in a joint case report filed by Plaintiff constitutes a prior admission by Plaintiff that the covenant to pay Annual Assessments does not run with the land.[11] A joint case report is a document drafted by both parties in advance of the Rule 16 Conference. It is intended to apprise the Court of the status of the case, the parties' claims and defenses, and the time needed for discovery. Simply because the joint case report was filed by Plaintiff does not mean that the statements therein are

---

prohibiting use of land for any purpose except residential); *Baederwood, Inc. v. Moyer*, 87 A.2d 246, 247 (Pa. 1952) (restrictive covenant prohibiting commercial use of property).

[11] The joint case report filed in this case states that the "obligations that Plaintiff seeks to enforce do not run with the land and therefore [sic] not enforceable against Defendant as successor in title to PMI."  (Joint Case Report 2, ECF No. 8.)

deemed admissions by Plaintiff.  When viewing the record as a whole, we are satisfied that Plaintiff has been consistent in its characterization of this action as one involving an alleged breach of a covenant running with the land.

Finally, Defendant contends that summary judgment at this stage is premature because Plaintiff has not responded adequately to discovery requests.  We agree with Defendant that summary judgment is not appropriate at this stage with respect to the amount of damages that should be awarded, *see infra* ¶ III.B.  However, summary judgment is appropriate with respect to liability.  The Declaration unambiguously provides that the covenant to pay Annual Assessments runs with the land and is binding on subsequent property owners.  Accordingly, summary judgment in favor of Plaintiff on its breach of contract claim is appropriate with respect to Defendant's liability to pay Annual Assessments.  *See Locust Lake*, 899 A.2d at 1200 (affirming summary judgment on claim for collection of annual dues and assessments where covenant in deed providing for such fees ran with the land); *see also Claret Capital Nominees v. Bennett*, No. 09-3532, 2009 U.S. Dist. LEXIS 112076, at *18-19 (E.D. Pa. Dec. 1, 2009) (noting that summary judgment is appropriate in a "relatively straightforward breach of contract case" where "a significant discovery period would not be expected").

**B.    Amount of Annual Assessments**

Having determined that the covenant to pay Annual Assessments runs with the land and is binding on Defendant, the question remains what amount is owed by Defendant.  Plaintiff submitted a summary of the "outstanding debt" allegedly representing the past due Annual Assessments owed by Defendant.  (Def.'s Mot. Ex. E.)  Defendant objects to this summary, and requests that it be stricken from the record.  Specifically, Defendant objects on the basis that

Defendant has not been provided with the back-up documentation supporting the summary and because the summary includes charges that are not related to the physical maintenance of the common areas.

Disputed issues of fact related to the claimed damages require us to deny summary judgment at this stage with respect to damages.  First, there is a dispute about when Defendant ceased making payments, the resolution of which will require additional discovery.  In the Complaint, Plaintiff initially stated that Defendant ceased making payments in January of 2008. In its Motion for Summary Judgment, Plaintiff stated that payments stopped in March of 2007. Defendant submits only that it has not paid the requested assessments; however, it does not state when payments were or were not made.

Second, Defendant disputes certain amounts that Plaintiff includes in its calculation of Annual Assessments allegedly owed, arguing that many of the alleged charges were never contemplated by the Declaration and Supplemental Agreement.  The Supplemental Agreement provides that maintenance costs associated with the interior of the mall are not included in Maintenance Assessments.  (Pl.'s Mot. Ex. D ¶ 5(b).)  Defendant argues that some of the charges for which Plaintiff seeks reimbursement relate to the interior of the mall.  Defendant has repeatedly requested back-up documentation for this summary and has not, to date, been provided with the requested discovery.  In addition, Defendant has requested a Rule 30(b)(6) deposition of one of Plaintiff's representatives.  Defendant is entitled to this discovery so that it has the opportunity to object to the amount of damages.

Finally, the Supplemental Agreement refers to and relies upon definitions contained in the Master Declaration when describing how to calculate the Maintenance Assessment.  (*See id.*

(stating that "Common Area Maintenance Expenses" and "Enclosed Mall" are defined in the Master Declaration).)  The parties have not provided the Court with the Master Declaration and thus the Master Declaration is not yet a part of the record in this case.  Resolution of the proper amount of Annual Assessments owed necessarily depends on the definitions contained in the Master Declaration.  Accordingly, we will deny summary judgment with respect to the amount of damages in order to allow the parties to complete discovery.

### C.      Motion to Strike Exhibits

Defendant requests that the Court strike the Supplemental Agreement based on application of the Pennsylvania Realty Transfer Tax statute, 72 Pa. Cons. Stat. Ann. § 8101-C, *et seq*.  For the reasons stated above, *see supra* ¶ III.A, we deny Defendant's Motion to Strike.  The Pennsylvania Transfer Tax statute does not affect the admissibility of the Supplemental Agreement for purposes of summary judgment.

Defendant also requests that the Court strike Exhibit E to Plaintiff's Motion for Summary Judgment, which is the summary of alleged Annual Assessments owed by Defendant.  Because we decline to grant summary judgment with respect to the amount of damages, we need not examine Exhibit E at this stage.  However, we caution Plaintiff that a summary of expenses will not be admitted at any trial in this matter without complying with Federal Rule of Evidence 1006.[12]  At the very least, Plaintiff will need to provide or make available the back-up

---

[12]  Federal Rule of Evidence 1006 states:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

documentation allegedly comprising the Annual Assessments owed by Defendant. Therefore, Defendant's motion to strike Exhibit E at this stage in the litigation is not ripe for disposition.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted in part and denied in part, and Defendant's Cross-Motion for Summary Judgment is denied. Moreover, Defendant's Motion to Strike is denied. An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**